**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILFRED KEYES, individually and
on behalf of CHRISTI KEYES, a
minor; CHRISTINE A. COLLEY,
individually and on behalf of KRIS M.
COLLEY, and MARK A. WILLIAMS,
minors; IRMA J. JENNINGS,
individually and on behalf of
RHONDA O. JENNINGS, a minor;
ROBERTA R. WADE, individually
and on behalf of GREGORY L.
WADE, a minor; EDWARD J.
STARKS, JR., individually and on
behalf of DENISE MICHELLE
STARKS, a minor; JOSEPHINE
PEREZ, individually and on behalf of
CARLOS A. PEREZ, SHIELA R.
PEREZ and TERRY J. PEREZ,
minors; MAXINE N. BECKER,
individually and on behalf of DINAH
L. BECKER, a minor; EUGENE R.
WEINER, individually and on behalf
of SARAH S. WEINER, a minor,

      Plaintiffs-Appellants,

No. 95-1487

and

CONGRESS OF HISPANIC EDUCATORS, an unincorporated association; MONTBELLO CITIZENS' COMMITTEE, INC.; ARTURO ESCOBEDO and JOANNE ESCOBEDO, individually and on behalf of LINDA ESCOBEDO and MARK ESCOBEDO, minors; EDDIE R. CORDOVA, individually and on behalf of RENEE CORDOVA, and BARBARA CORDOVA, minors; ROBERT PENA, individually and on behalf of THERESA K. PENA and CRAIG R. PENA, minors; ROBERT L. HERNANDEZ and MARGARET M. HERNANDEZ, individually and on behalf of RANDY R. HERNANDEZ; ROGER L. HERNANDEZ, RUSSELL C. HERNANDEZ, RACHELLE J. HERNANDEZ, minors; FRANK MADRID, individually and on behalf of JEANNE S. MADRID, a minor; RONALD E. MONTOYA and NAOMI R. MONTOYA, individually and on behalf of RONALD C. MONTOYA, a minor; JOHN E. DOMINGUEZ and ESTHER E. DOMINGUEZ,

-2-

individually and on behalf of JOHN E. DOMINGUEZ, MARK E. DOMINGUEZ and MICHAEL J. DOMINGUEZ, minors; JOHN H. FLORES and ANNA, individually and on behalf of THERESA FLORES, JONI A. FLORES and LUIS E. FLORES, minors; MOORE SCHOOL COMMUNITY ASSOCIATION, and MOORE SCHOOL LAY ADVISORY COMMITTEE; CITIZENS ASSOCIATION FOR NEIGHBORHOOD SCHOOLS, an unincorporated association, and on behalf of all others similarly situated,

       Plaintiffs-Intervenors,

v.

SCHOOL DISTRICT NO. 1, Denver, Colorado; THE BOARD OF EDUCATION, SCHOOL DISTRICT NUMBER ONE, DENVER, COLORADO; WILLIAM C. BERGE, individually and as President, Board of Education, School District Number One, Denver, Colorado; STEPHEN J. KNIGHT, JR., individually and as Vice President, Board of Education, School District Number One, Denver, Colorado; JAMES C. PERRILL; FRANK K. SOUTHWORTH; JOHN H. AMESSE; JAMES D. VOORHEES, JR. and RACHEL B. NOEL,

individually and as members, Board Education, School District Number One, Denver, Colorado; ROBERT D. GILBERTS, individually and as Superintendent of Schools, School District Number One, Denver, Colorado,

Defendants-Appellees,

MR. AND MRS. DOUGLAS BARNETT, individually and on behalf of JADE BARNETT, a minor; MR. AND MRS. JACK PIERCE, individually and on behalf of REBECCA PIERCE and CYNTHIA PIERCE, minors; JANE WALDEN, individually and on behalf of JAMES CRAIG WALDEN, a minor; MR. AND MRS. WILLIAM B. BRICE, individually and on behalf of KRISTIE BRICE, a minor; MR. AND MRS. CARL ANDERSON, individually and on behalf of GREGORY ANDERSON, CINDY ANDERSON, JEFFERY ANDERSON and TAMMY ANDERSON, minors; MR. AND MRS. CHARLES SIMPSON, individually and on behalf of DOUGLAS SIMPSON, a minor; MR. AND MRS. PATRICK McCARTHY, individually and on behalf of CASSANDRA McCARTHY, a minor; RICHARD KLEIN, individually and on behalf of JANET KLEIN, a minor; MR. AND MRS. FRANK RUPERT,

individually and on behalf of
MICHAEL RUPERT and SCOTT
RUPERT, minors; STATE OF
COLORADO, ex rel. Gale Norton,

Defendants-Intervenors,

_____

SUSAN TARRANT, WADE POTTER,
DEBORAH POTTER, DANIEL J.
PATCH, MARILYN Y. PATCH,
CHRIS ANDRES, RONALD GRIEGO,
DORA GRIEGO and RANDY
FRENCH,

Intervenors.

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 69-M-1499)

Gordon G. Greiner, Holland & Hart, Denver, CO, (Dennis D. Parker, NAACP
Legal Defense and Education Fund, Inc., New York, NY, on the briefs), for
Plaintiffs-Appellants.

Michael H. Jackson, Semple & Jackson, Denver, CO (Phil C. Neal, Neal, Gerber
& Eisenberg, Chicago, IL, on the briefs), for Defendants-Appellees.

Timothy M. Tymkovich, Solicitor General, State of Colorado, Denver, CO (Gale
A. Norton, Attorney General of Colorado, Denver, CO, and William E. Thro,
Assistant Attorney General of Colorado, Denver, CO, on the briefs), for
Defendant-Intervenor-Appellee State of Colorado.

Before **ANDERSON, HENRY,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

_____

Since 1969 the United States District Court for the District of Colorado has maintained jurisdiction over School District No. 1, Denver, Colorado ("the School District"), for the purpose of eliminating *de jure* segregation in the Denver schools. This appeal arises from the district court's 1995 decision to terminate its jurisdiction over the School District, finding the School District had eliminated the vestiges of *de jure* discrimination to the extent practicable. Appellants Wilfred Keyes and others[1] ("Appellants") do not appeal the termination of jurisdiction, but rather appeal the district court's decision insofar as it opined upon the constitutionality of Article IX, Section 8 of the Colorado Constitution ("the Busing Clause") and two Colorado statutory provisions. *See* Colo. Rev. Stat. §§ 22-36-101(3), 22-30.5-104(3). Those issues, however, are not justiciable. As a consequence, there is no case or controversy as required by Article III, Section 2 of the United States Constitution, and this appeal is dismissed for lack of jurisdiction.

_____

[1]The district court removed the claims of the Congress of Hispanic Educators to a separate and independent civil action under the Equal Educational Opportunities Act of 1974. *See Keyes v. Congress of Hispanic Educators*, 902 F. Supp. 1274, 1275 (D. Colo. 1995).

# I. BACKGROUND

This case originated in June of 1969, when children in the Denver public schools challenged the School District's deliberate policy of racial segregation. *See Keyes v. School Dist. No. 1*, 303 F. Supp. 279 (D. Colo. 1969). Since that challenge, this case has evolved through several stages of litigation during which this and other courts have rendered numerous opinions.[2] A brief summary of the history of the case provides necessary context.

From 1960 through 1969, the School District established and maintained *de jure* segregation in the Denver public schools. *Keyes XIX*, 902 F. Supp. 1274,

---

[2]*See Keyes v. School Dist. No. 1,* 303 F. Supp. 279 (D. Colo. 1969) ("*Keyes I*"), *modified*, 303 F. Supp. 289 (D. Colo. 1969) ("*Keyes II*"), *order reinstated*, 396 U.S. 1215 (1969) (Brennan, J., in chambers) ("*Keyes III*"); *Keyes v. School Dist. No. 1,* 313 F. Supp. 61 (D. Colo. 1970) ("*Keyes IV*"); *supplemented, Keyes v. School Dist. No. 1*, 313 F. Supp. 90 (D. Colo. 1970) ("*Keyes V*"), *aff'd in part and rev'd in part*, 445 F.2d 990 (10th Cir. 1971) ("*Keyes VI*"), *cert. granted,* 404 U.S. 1036 (1972) and *cert. denied sub. nom. School Dist. No. 1 v. Keyes*, 413 U.S. 921 (1973), *modified and remanded*, 413 U.S. 189 (1973) ("*Keyes VII*"), *reh'g denied,* 414 U.S. 883 (1973), *on remand*, 368 F. Supp. 207 (D. Colo. 1973) ("*Keyes VIII*") and 380 F. Supp. 673 (D. Colo. 1974) ("*Keyes IX*"), *aff'd in part and rev'd in part*, 521 F.2d 465 (10th Cir. 1975) ("*Keyes X*"), *cert. denied*, 423 U.S. 1066 (1976); *Keyes v. School Dist. No. 1*, 474 F. Supp. 1265 (D. Colo. 1979) ("*Keyes XI*"); *Keyes v. School Dist. No. 1*, 540 F. Supp. 399 (D. Colo. 1982) ("*Keyes XII*"); *Keyes v. School Dist. No. 1*, 576 F. Supp. 1503 (D. Colo. 1983) ("*Keyes XIII*"); *Keyes v. School Dist. No. 1*, 609 F. Supp. 1491 (D. Colo. 1985) ("*Keyes XIV*"); *Keyes v. School Dist. No. 1*, No. C-1499 (D. Colo. Oct. 29, 1985) ("*Keyes XV*") (Order for Further Proceedings); *Keyes v. School Dist No. 1*, 653 F. Supp. 1536 (D. Colo. 1987) ("*Keyes XVI*"); *Keyes v. School Dist. No. 1*, 670 F. Supp. 1513 (D. Colo. 1987) ("*Keyes XVII*"), *aff'd*, 895 F.2d 659 (10th Cir. 1990) ("*Keyes XVIII*"), *cert. denied*, 498 U.S. 1082 (1991); *Keyes v. Congress of Hispanic Educators*, 902 F. Supp. 1274 (D. Colo. 1995) ("*Keyes XIX*").

1276 (D. Colo. 1995). In 1969 and 1970, the district court found that the School District had engaged in seven specific *de jure* segregative acts by attempting to maintain predominantly white schools in the Park Hill neighborhood. *See Keyes XIX*, 902 F. Supp. 1274, 1278 (D. Colo. 1995) (citing *Keyes I*, 303 F. Supp. 279, 282-85 (D. Colo. 1969); *Keyes II*, 303 F. Supp. 289, 295 (D. Colo. 1969); *Keyes IV*, 313 F. Supp. 61 (D. Colo., 1970)). As a consequence, it ordered a desegregation plan for the Park Hill area schools in 1970. *Keyes V*, 313 F. Supp. 90, 96-99 (10th Cir. 1970).

On appeal, the United States Supreme Court broadened the scope of the district court's jurisdiction. Instead of limiting the desegregation plan to the Park Hill area, the Supreme Court determined that the entire Denver school system was a dual system[3] requiring desegregation. *Keyes VII*, 413 U.S. 189, 201-02 (1973). Thus, in 1974, the district court ordered a city-wide desegregation plan. *See Keyes XIX*, 902 F. Supp. at 1279. This court, however, found that plan inadequate. *Keyes X*, 521 F.2d 465, 475-79 (10th Cir. 1975). Finally in 1976, the

---

[3]The Supreme Court stated: "[W]here plaintiffs prove that the school authorities have carried out a systematic program of segregation affecting a substantial portion of the students, schools, teachers, and facilities within the school system, it is only common sense to conclude that there exists a predicate for a finding of the existence of a dual system." *Keyes VII*, 413 U.S. at 201. On remand, the district court conducted a second trial and concluded: "The Supreme Court's viewpoint based on the record before it is that the Denver school system is a dual system. There can be no doubt as to its view . . . ." *Keyes VIII*, 368 F. Supp. at 210.

parties agreed to a remedial plan which was approved and implemented. *See Keyes XIX,* 902 F. Supp. at 1279. The remedial plan required, among other things, pairing elementary schools, changing attendance zones, establishing percentage ratios of Anglo to minority students, and transporting students by bus to implement the plan. *Id.*

Following the implementation of the remedial plan, the School District passed Resolution 2233 to direct continued desegregation efforts. In 1984, the School District moved to terminate the court's jurisdiction. *Keyes XIV,* 609 F. Supp. 1491, 1518-20 (D. Colo. 1985). The district court denied the motion, finding the School District had not yet achieved unitary status and that Resolution 2233 was too vague. *Id.*

In an effort to remedy the vagueness of Resolution 2233, the School District passed Resolution 2314 in 1987. Resolution 2314 called for continuing teacher assignment and student transfer policies that enhanced integration and required annual reports of progress toward achieving a unitary school district. The School District again sought to terminate jurisdiction and the court again refused. Instead, the court authorized existing plans to remedy the vestiges of past discrimination and ordered a meeting with counsel to issue a permanent injunction against the School District. *Keyes XVI*, 653 F. Supp. 1536, 1539-40, 42 (D. Colo. 1987). Still later that same year, the court entered an Interim

Decree, superseding all prior remedial actions. *Keyes XVII,* 670 F. Supp. at 1516-17. That decree diminished the court's jurisdiction by freeing the School District to make changes in its existing plans to accommodate new situations. *Id.*

On appeal, this court affirmed the denials of the motions to terminate jurisdiction, but invalidated some portions of the Interim Decree which merely required the School District to obey the law. *See Keyes XIX*, 902 F. Supp. at 1281; *Keyes XVIII*, 895 F.2d 659, 666-69 (10th Cir. 1990). The School District thus remained under the district court's jurisdiction to remedy past discrimination, but could develop its own plans to do so. *See Keyes XIX*, 902 F. Supp. at 1281.

In 1992 the School District moved again to terminate the district court's jurisdiction. *See id.* at 1275. This time Appellants requested the court to rule on the constitutionality of Colorado's Busing Clause before it decided whether to terminate jurisdiction.[4] The Busing Clause, Article IX, Section 8 of the Colorado Constitution, provides in pertinent part that no school pupil shall "be assigned or transported to any public educational institution for the purpose of achieving racial balance." Appellants asserted that after termination of the court's

---

[4]Appellants argued the district court should not completely terminate its jurisdiction. Although Appellants agreed that "the indicia of *de jure* segregation ha[d] been removed from student assignments, faculty, staff, transportation, extra curricular activities and facilities," they requested the court retain residual control over the School District on the ground that vestiges of the dual system remained in the form of racial disparity in discipline, drop-out rates, and gifted and talented programs.

jurisdiction, the Busing Clause would impede the School District's ability to implement Resolutions 2233 and 2314 and other policies adopted to change pupil assignments. *Keyes XIX*, 902 F. Supp. at 1275.

The School District agreed with that claim and stipulated that the School District's plans would conflict with the Busing Clause. *Id.* at 1275, 1283. Appellants also requested a determination of the constitutionality of certain sections of two Colorado statutory provisions: The Colorado Public Schools of Choice Act, Colo. Rev. Stat. § 22-36-101(3)(d), and the Colorado Charter Schools Act, Colo. Rev. Stat. § 22-30.5-104(3). The Attorney General of the State of Colorado was allowed to intervene and defend the validity of the Busing Clause. *Keyes XIX*, 902 F. Supp at 1275.

In a comprehensive opinion based on evidence received during hearings on August 23-25, 1994, the district court granted the School District's motion to terminate jurisdiction, stating the School District had complied with the desegregation decrees and that past *de jure* segregation had been eliminated to the extent practicable. *Id.* at 1275, 1285, 1308-09. Additionally, the district court found that the School District's existing policies did not conflict with the Busing Clause. *Id.* at 1285. In dicta, the court passed upon the issue of the constitutionality of the Busing Clause itself, indicating that it is consistent with the 14th Amendment. *Id.* The district court stated that its consideration of the

Busing Clause issue was "to guide the District upon termination of . . . jurisdiction." *Id.* at 1275. The district court did not decide whether the Colorado Schools of Choice Act and the Charter Schools Act are valid under the Fourteenth Amendment to the United States Constitution, stating only: "Comment on each [of the state and federal statutory requirements which the School District must now follow] is inappropriate, and this court may not give advisory opinions." *Id.* at 1285.

It is from the district court's decision that Appellants now appeal. Appellants do not, however, appeal the termination of jurisdiction. They instead argue that the district court's opinion was ambiguous[5] and, to the extent that the issue was actually decided, appeal any determination that the Busing Clause, the Public Schools of Choice Act, and the Charter Schools Act are constitutional.[6]

---

[5]After the district court's decision was issued in 1995, Appellants made a Motion for Clarification pursuant to Fed. R. Civ. P. 52(b). Specifically, Appellants requested clarification regarding whether the district court had determined the School District could or could not maintain its existing plans in light of the Busing Clause. In denying the motion, the district court stated that its opinion "resolved the only question properly presented on the record before it regarding the validity of the Busing Clause under the United States Constitution. To extend the findings and conclusions in the manner suggested would violate the prohibition against rendering advisory opinions."

[6]The district court was correct to refuse to address the constitutionality of the Public Schools of Choice Act and the Charter Schools Act, and we likewise do not address them in this opinion. For the same reason this court does not have jurisdiction to determine the constitutionality of the Busing Clause, we cannot pass upon the constitutionality of the Public Schools of Choice Act or the Charter Schools Act. As is further elucidated below, the only justiciable issue before the

## II. ANALYSIS

This appeal presents serious issues concerning the court's jurisdiction. Under Article III, Section 2 of the United States Constitution, federal courts are courts of limited jurisdiction. Superimposed upon the specified subject matter of federal court jurisdiction is the general limitation of that jurisdiction to cases or controversies. *See* U.S. Const. art. III, § 2; *United States National Bank of Oregon v. Independent Insur. Agents of America*, 508 U.S. 439, 446 (1993). The constitutional case or controversy requirement for federal court jurisdiction in turn includes the necessity of justiciability, the very issue before the court in this appeal. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).

The Memorandum Opinion and Order of the district court elaborately provides the context for consideration of this court's jurisdiction under Article III and the referenced restrictions on that jurisdiction. Both the format and content of the district court's opinion is instructive. The format includes three sections: "History;" "The Future;" and "Findings of Fact," analyzing the status of the School District as of the August, 1994 hearing. *Keyes XIX*, 902 F. Supp. at 1276, 1282, 1286. While there is necessary overlap in the various sections of the

---

district court was whether or not to terminate jurisdiction. Any additional discussion of the constitutionality of either the Busing Clause or Colorado statutes is merely advisory "to guide the district upon termination of . . . jurisdiction." *Keyes XIX* at 1275. Such "guidance" is dicta.

district court's opinion, it essentially divides this case and the desegregation of the School District into the past, the present, and the future. Those time frames are critical in this court's consideration of jurisdiction.

The district court was charged with the obligation to determine whether the School District had complied in good faith with the court's various desegregation decrees, had eliminated to the extent practicable the vestiges and effects of its past discriminatory acts, and had thereby altered the Denver schools from a segregated dual system to unitary status. *See Board of Educ. v. Dowell*, 498 U.S. 237, 245-50 (1991). As a consequence, it was necessary to analyze the present in light of the past. The district court resolved the issues in favor of the School District. The district court further held that the pupil assignment plan in place at the time of the hearing did not violate the Busing Clause. *Keyes XIX*, 902 F. Supp at 1285. The court held that the School District's motivation in implementing the plan was the eradication of segregation vestiges, rather than the achievement of racial balance, which would be prohibited by the Busing Clause. *Id.*

Beyond addressing the past and present, the district court considered the Busing Clause in the future. Having resolved that the School District's pupil assignment plan did not conflict with the Colorado Busing Clause, the court nevertheless unnecessarily opined that the clause was consistent with the

-14-

Fourteenth Amendment. *Id.*[7] The court also opined that the Busing Clause and related education statutes will provide challenges to the School District and will be fodder for future litigation. *Id.* at 1283. The district court, however, chose not to comment further on the effect or applicability of federal or state statutes, premising its reticence on the prohibition of advisory opinions. *Id.* at 1285.

A. RIPENESS

Adhering to the district court's past, present and future format, we address Appellants' claims. Specifically, Appellants only challenge the district court's dicta concerning the future. Appellants do not challenge any of the court's rulings with respect to the present. They neither challenge the district court's decision to terminate jurisdiction,[8] nor do they appear to challenge the district court's statement that the School District's policies in effect at the time of the August, 1995 hearing did not conflict with the Busing Clause.[9] Appellants' sole

_____

[7]The district court stated: "The Busing Clause is preceded by a prohibition on the use of race or color in making any distinction or classification of pupils. That is entirely consistent with the 14th Amendment." *Keyes XIX*, 902 F. Supp. at 1285.

[8]In their Opening Brief, Appellants state: "The district court, over the limited objections of the plaintiffs and plaintiffs-intervenors, granted the School District's Motion to Terminate Jurisdiction and issued a final Judgment dismissing the case. No parties are appealing from that determination." Appellant Br. at 6 (citation omitted).

[9]Rather than specifically appealing the latter determination, Appellants argue that it is unclear whether the district court found there was a conflict between the School District's policies and the Busing Clause and ask this court to

request is that this court resolve whether the Busing Clause is constitutional, an issue for the future.

The case or controversy requirement of Article III admonishes federal courts to avoid "premature adjudication" and to abstain from "entangling themselves in abstract disagreements." *Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967). "[T]he doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1545 (10th Cir. 1996) (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citations and quotations omitted)).

Ripeness is a question of law, reviewed *de novo*. *See New Mexicans for Bill Richardson v. Gonzalez*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citing *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir. 1995)). As a jurisdictional prerequisite, ripeness may be examined by this court *sua sponte*. *See Metropolitan Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 n.13 (1991). The resolution of ripeness

---

"resolve the ambiguity." Appellant Reply Br. at 12. We have difficulty understanding the thrust of this argument, in light of the district court's unequivocal statement: "The pupil assignment plan in effect at the time of the August, 1994 hearing does not violate the Busing Clause because it was not adopted for the purpose of achieving racial balance." *Keyes XIX*, 902 F. Supp. at 1285.

"requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott*, 387 U.S. at 149. This court must therefore apply the ripeness factors of fitness and hardship to the sole issue appealed, the constitutionality of the Busing Clause.

Appellants and the School District requested that the district court resolve the constitutionality of the Busing Clause in order to guide the School District for the future after the termination of jurisdiction.[10] The parties essentially stipulated to the existence of a conflict between the School District's policies and the Busing Clause in order to receive a ruling on the constitutionality of the clause. The parties, however, cannot create a case or controversy simply by agreement. *See Wilson v. Glenwood Intermountain Properties, Inc.,* 98 F.3d 590, 593 (10th Cir. 1996) (finding "parties cannot confer subject matter jurisdiction on the courts by agreement").

Appellants did not challenge an extant School District policy, nor did they claim the Busing Clause caused the School District to refrain from adopting a specific policy. Rather, they requested the district court to render an opinion in a

---

[10]The School District sought "to remove [the Busing Clause] as a possible obstacle to terminating jurisdiction over the District and to clarify what the District's duties would be once jurisdiction was terminated." The School District acknowledged in its brief that it is now satisfied that by terminating jurisdiction and stating that there was no conflict between any extant policies and the Busing Clause, the district court's opinion resolved both matters.

vacuum. Any statement by the district court in response, however, was necessarily dicta.[11]

Constitutional analysis requires the application of the challenged provision in a case or controversy. Appellants' failure to appeal rulings relevant to the present and failure to reference a conflict between the Busing Clause and an actual or proposed School District policy deprives the analysis of a case or controversy within which to test the clause's constitutionality. *See Wilson*, 98 F.3d at 594 (because plaintiffs did not appeal district court's denial of claims of religious discrimination in housing, a case or controversy surrounding gender

---

[11]During oral arguments, Timothy M. Tymkovich, Solicitor General for the State of Colorado, acknowledged that the decision to terminate jurisdiction could have been made without a discussion of the constitutionality of the Busing Clause:

> The Court: Could the district court in your view have terminated jurisdiction without passing on the constitutional questions?
> Mr. Tymkovich: Yes. In fact we argued--that was our lead argument below to Judge Matsch. We thought that a future problem of the Busing Clause on Denver School District's post-*Keyes* conduct was a case for another day, so we asked Judge Matsch not to rule on the constitutionality. We said it was irrelevant to the finding of unitary status . . . .
> . . . .
> Mr. Tymkovich: I think the court made that clear in his response on the motion to clarify because he said that for him to comment on the post-decree conduct of the school district would be advisory--and by that I mean dicta.

discrimination claims was lacking). As a consequence, the issue is not fit for a judicial resolution and lacks ripeness. *See Abbott*, 387 U.S. at 149.

Appellants argue that the Busing Clause prevents or has prevented the School District and individual schools from instituting any *potential* voluntary integration plans based on race. They argue that this exemplifies a violation of the Equal Protection clause of the Fourteenth Amendment by interdicting benefits, such as integration plans, to citizens when those benefits are based solely on race. Appellants, however, make no effort to establish that any particular school desires to implement voluntary integration plans, let alone that any school has been deterred by the Busing Clause from implementing such a plan. This court cannot speculate whether any school will propose an integration plan, what the plan might be, and thus whether such a plan is prohibited by Colorado's Busing Clause. Appellants have failed to present this court with any specific integration proposal to juxtapose with the Busing Clause. Moreover, the State of Colorado has expressly and unequivocally conceded that it has no plans to challenge the School District's existing policies, thus confirming the absence of a case or controversy.[12]

_____

[12]The following colloquy between this court and Mr. Tymkovich occurred at oral argument:

The Court: Are you then saying on behalf of the State of Colorado that Colorado does not believe that the present programs in effect which involve busing in the Denver School District constitute

This court may not speculate about future conflicts between the Busing Clause and the School District's policies, but rather must focus its analysis on any controversy as it exists today. *See Sierra Club v. Yuetter*, 911 F.2d 1405, 1416 (10th Cir. 1990) (holding court must avoid "decision where the harm [is] contingent upon uncertain or speculative future administrative action"). Because Appellants cannot demonstrate a present controversy, we lack jurisdiction to hear this appeal.

B. STANDING

For many of the same reasons this case is not ripe for review, Appellants do not have standing to appeal. Standing is a threshold, jurisdictional issue. *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993). "[A] plaintiff must maintain standing at all times throughout the litigation for a court to retain

---

busing for the purpose of achieving racial balance?

     Mr. Tymkovich: Yes, your Honor. I want to be very clear about that because I think what we're talking about is a potential issue for another day as to whether the school district has impermissibly intruded on the commands of the Busing Clause. . . . We don't believe that the school district today is violating those provisions of law. . . .

    . . . .

    . . . The Court: My question now is, under the practices and policies now in effect, the State of Colorado, are they committing that they will not challenge those under the state constitutional provision prohibiting busing for the purpose of achieving racial balance?

    Mr. Tymkovich: As we understand those policies today, your Honor, the answer is "no."

jurisdiction." *Powder River*, 54 F.3d at 1485 (finding that when plaintiff no longer has injury, Article III requirements of case or controversy are no longer met).

To have standing, plaintiffs "must have suffered an 'injury-in-fact.'" *Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1572 (10th Cir. 1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This injury-in-fact element in turn requires plaintiffs to demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotations omitted).

The impediments to ripeness are equally impediments to standing. This court's focus is on past and present injury; possible future injury is insufficient to create standing. *See Lujan*, 504 U.S. at 560-61. Appellants have failed to demonstrate that the School District or any school has withdrawn policies, instituted policies, or refrained from withdrawing or instituting policies as a result of the Busing Clause.[13] Consequently, any injury flowing from the application of

_____

[13]Although not reflected in the record, the School District has begun dismantling aspects of its prior plans which involved race-based pupil assignment or transportation. Appellants suggest that the only reason the School District has begun dismantling its existing policies is because of a perceived conflict with the Busing Clause. They offer no support for this reasoning, and Michael H. Jackson, counsel for the School District, expressly denied at oral argument any nexus between the Busing Clause and the dismantling of any plan or program:

the Busing Clause constitutes possible future injury, not past or present injury.

Appellants thus lack standing.[14]

---

> The Court:  Does the existence of the Busing Clause cause the district to feel compelled to dismantle any remedial plan in effect?
> Mr. Jackson:  I do not believe so.
> The Court:  So you're representing that the district feels no compulsion from the presence of the Busing Clause, either on its face or as applied?
> Mr. Jackson:  That's correct.
> The Court:  So any fears that Mr. Greiner or his clients have would not be fears based on the present, they would be fears based upon the as yet, inchoate, future?
> Mr. Jackson:  I believe that's true and I believe that the arguments of Mr. Greiner and Mr. Tymkovich this morning confirm that.

[14]Appellants' final argument in their attempt to create standing is indeed creative.  They argue that any statements about the constitutionality of the Busing Clause in the district court's opinion could be used by the State of Colorado and the School District under the doctrines of claim preclusion or issue preclusion to prevent further litigation over the Busing Clause.  Claim preclusion bars claims when "the prior action involved identical claims and the same parties or their privies." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995). On the other hand, issue preclusion can bar future litigation even when the parties are not identical. *Id.*

It is true that the district court's opinion contains a discussion regarding the constitutionality of the Busing Clause.  That discussion, however, was not essential to any issue properly before the district court. Because the court's statements regarding the constitutionality of the Busing Clause were not essential to the decision to terminate jurisdiction, the sole issue before the court, that language was dicta.  *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995).  As such, it presents no threat under the doctrines of claim or issue preclusion.

## III. CONCLUSION

For the foregoing reasons, this appeal is DISMISSED for lack of jurisdiction.