**F I L E D**
United States Court of Appeals
Tenth Circuit

**SEP 11 2002**

**PATRICK FISHER**
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

RIO GRANDE SILVERY MINNOW,
(Hybognathus amarus);
SOUTHWESTERN WILLOW
FLYCATCHER, (Empidonax trailii
extimus); DEFENDERS OF
WILDLIFE; FOREST GUARDIANS;
NATIONAL AUDUBON SOCIETY;
NEW MEXICO AUDUBON
COUNCIL; SIERRA CLUB;
SOUTHWEST ENVIRONMENTAL
CENTER,

        Plaintiffs-Appellees,

JOHN W. KEYS, III, Commissioner,
Bureau of Reclamation; STEVE
HANSON, Regional Director, Bureau
of Reclamation; BUREAU OF
RECLAMATION, an agency of the
United States; JOSEPH BALLARD,
General, Chief Engineer, Army Corps
of Engineers; RAYMOND MIDKIFF,
Lt. Col., Albuquerque District
Engineer; UNITED STATES ARMY
CORP OF ENGINEERS, an agency
of the United States; UNITED
STATES OF AMERICA; GALE
NORTON, Secretary, Department of
Interior; U.S. FISH AND WILDLIFE
SERVICE,

        Defendants-Appellants,

THE MIDDLE RIO GRANDE
CONSERVANCY DISTRICT;
STATE OF NEW MEXICO; RIO

Nos.  02-2130, 02-2135,
       02-2151, 02-2152,
       02-2160, 02-2186

(D.C. No. CIV-99-1320-JP/RLP)
(D. New Mexico)

CHAMA ACEQUIA ASSOCIATION,
CITY OF ALBUQUERQUE,

        Defendants-Intervenors-
        Appellants,

---

DOUBLE M RANCH;
CITY OF SANTA FE,

        Intervenors.

---

## ORDER AND JUDGMENT[*]

---

Before **EBEL**, **HENRY**, and **BRISCOE**, Circuit Judges.

These matters come before us on plaintiffs-appellees' motions to dismiss all appeals for lack of jurisdiction, and intervenors-appellants' motion for a stay pending appeal. We hold that intervenors-appellants lack standing to appeal and that the district court's interlocutory ruling is not subject to immediate review by the remaining appellants. The stay motion is, accordingly, moot.

These appeals arise out of an ongoing action in the district of New Mexico reviewing efforts by the Fish and Wildlife Service (FWS) to save the endangered

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Rio Grande Silvery Minnow,[1] in accordance with its duties toward listed species under the Endangered Species Act (ESA). When this action was commenced by the plaintiff conservation groups, FWS was still in the process of consulting with federal agencies active in river water storage and diversion, including the Bureau of Reclamation (BOR) and Army Corps of Engineers (Corps), about reasonable and prudent alternatives for avoiding jeopardy to the minnow. Thus, the pleadings focused on expanding the scope of that consultation–specifically to consider alternatives involving the use of water otherwise earmarked for the Middle Rio Grande Conservancy District (MRGCD) and Rio Chama Acequia Association (RCAA) and, through them, local users. That prompted the latter entities to intervene, along with the State of New Mexico and the City of Albuquerque. These intervenors supported the position taken by BOR and the Corps that they lacked discretion to redirect water already obligated to other users. In addition, MRGCD asserted a cross-claim against the United States to quiet title to certain dam and diversion facilities.

In June 2001, FWS issued a final Biological Opinion (BO) setting forth a plan for protection of the minnow that did not impact MRGCD or RCAA water and an associated Incidental Take Statement (ITS) specifying the conditions under

---

[1]     Initially, the Southwestern Willow Flycatcher was also involved, but as its range is not restricted to the Rio Grande and its numbers have increased, this bird species has not played a part in the proceedings under review.

which incidental taking of the minnow would not be deemed a violation of the ESA. In response, plaintiffs amended their pleadings to add claims challenging the BO and ITS. Still, their claims turned largely on the refusal of the federal agencies to consider using MRGCD and RCAA water in the consultation leading to preparation of the BO. In this regard, BOR and the Corps insisted, and FWS accepted, that pre-existing obligations precluded them from reducing water deliveries to MRGCD and RCAA to assist in the protection of the minnow.

On April 19, 2002, the district court issued a memorandum opinion and order specifically addressing the validity of the BO (the court made it clear that other claims asserted by the plaintiffs, as well as MRGCD's cross-claim, were reserved for disposition at a later date). Although the court agreed with plaintiffs that BOR had discretion to divert MRGCD and RCAA water for protection of the minnow and that such diversion should therefore have been considered during BOR's consultation with FWS, [2] the court upheld the BO under the deferential standard of administrative review in 5 U.S.C. § 706(2)(A). The court concluded that "[e]ven though FWS accepted BOR's erroneous view that it lacked discretion . . . to alter water deliveries to contractors [such as MRGCD and RCAA], FWS came up with an interim solution to avoid jeopardy [to the minnow] in

---

[2] In contrast, the court held the Corps did not have such discretion over the water within its purview, and the Corps plays no role in the proceedings here.

coordination with all the major players in the Middle Rio Grande basin." Mem. Op. at 44; *see also id.* at 17-19 (describing protective elements of BO).

The character of the BO as an "interim solution" was important to the district court, which emphasized that "[t]he BO lasts for only a limited period [expiring Dec. 31, 2003], and is subject to reinitiation of consultation" before that should conditions threaten the minnow's viability. *Id.* at 44 *; see id.* at 19 (describing consultation as "a dynamic, ever-evolving process" and noting "the [June 2001] BO is not intended to be the final solution to protecting the minnow from extinction"). Nevertheless, the court made it clear that the extant BO–under which intervenors' interests remain unaffected–was approved; consequently, any effect of its contrary finding of agency discretion to divert MRGCD and RCAA water was only prospective and contingent. In short, "[t]he overall effect of [the court's] decision will be that *when the parties go back to the table*, either in informal negotiations or in reinitiation of formal consultation, the annual water deliveries [to MRGCD and RCAA] that [the court] identified as discretionary *will be available to be considered* for use in protecting the endangered silvery minnow from extinction." *Id.* at 44-45 (emphasis added); *see id.* at 20 (court's "ruling on the scope of discretion . . . *will guide* the agencies and should help expedite the process *when further consultation occurs*" (emphasis added)).

Intervenors, evidently concerned that subsequent consultation might lead to a decision to use their water to protect the silvery minnow, immediately appealed. Plaintiffs-appellees moved to dismiss these interlocutory appeals for lack of jurisdiction. When the BOR and related parties ("federal defendants") added their own appeal, plaintiffs-appellees moved to dismiss it as well. After the district court issued a clarification order, to restate and confirm a point already made in its opinion, MRGCD filed another, substantively redundant appeal, prompting a last motion to dismiss.

In the meantime, some intervenors jointly moved for a stay pending appeal. The district court denied the motion, largely because of "serious questions about the finality and appealability of the [ruling] . . . which [intervenors] intend to appeal." Order Denying Stay, at 1. The court reiterated the inherently remote and contingent nature of any implications its order had for intervenors: "When further consultation between BOR and FWS takes place, the scope of the consultation will be broader . . . because BOR will discuss with FWS possible use of [MRGCD and RCAA] water. This does not mean, however, that BOR and FWS . . . must decide to use some [MRGCD or RCAA] project water to preserve the endangered silver minnow. BOR and FWS may, once again, find a way to avoid jeopardy to the silvery minnow without the use of project water." *Id.* at 2. Intervenors have since renewed their stay request with us, which plaintiffs-appellees oppose.

## Intervenors' Appeals

Plaintiffs-appellees' motions to dismiss focus on whether the challenged ruling is an immediately appealable order, but their arguments also suggest that intervenors lack standing to appeal, which is a fundamental jurisdictional deficiency we notice even when the parties do not. *PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10 th Cir. 2002). "To have standing, one must be aggrieved by the order from which appeal is taken." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993). "The law is well-settled that a party is generally not aggrieved by, and thus lacks standing to appeal from, a judgment rendered against a co-party." *Penda Corp. v. United States*, 44 F.3d 967, 971 (Fed. Cir. 1994). The district court's order declared the statutory consultative duties of the federal defendants, not those of intervenors. [3] Even if that order carries present injunctive force with respect to the federal defendants' execution of those duties, it "does not directly or indirectly restrain [*intervenors*] from the performance of any act as a third-party defendant." *McLaughlin v.*

---

[3] Of course, the court also affirmed the BO, but this aspect of its decision does not further *any* appellant's cause for appellate review. Affirmance of the BO, which upheld the interim federal plan leaving MRGCD and RCAA water untouched, was in itself a ruling clearly in favor of the federal defendants and intervenors and, thus, appealable, if at all, not by them but by plaintiffs. *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001).

*Pernsley* , 876 F.2d 308, 313 (3d Cir. 1989) (holding third-party defendant lacked standing to appeal injunction entered against defendant).

The only basis intervenors can invoke in support of their standing to appeal from the district court's declaration of the federal defendants' consultative duties is that it necessarily had demonstrable adverse consequences for their interests in Rio Grande water. Under the basic standing principles set forth in *Lujan v. Defenders of Wildlife* , 504 U.S. 555, 560-61 (1992), they would have to show an "injury in fact" to their interests, a causal connection between the order under review and that injury, and a likelihood that the injury would be redressed by a favorable decision by this court. *See In re Grand Jury* , 111 F.3d 1066, 1071 (3d Cir. 1997) ("The same constitutional minima for standing to sue [i.e., injury in fact, causation, and redressibility] are also required for standing to appeal."). The injury-in-fact element precludes intervenors' attempt to appeal.

Injury-in-fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Keyes v. School Dist. No. 1* , 119 F.3d 1437, 1445 (10 th Cir. 1997) (quoting *Lujan*, with citations and quotations omitted). In light of the latter requirement, "[t]his court's focus is on past and present injury; possible future injury is insufficient to create standing." *Id.* While unrealized but imminent harm can satisfy the injury-in-fact element, the Supreme Court has cautioned

that the concept of imminence "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes–that the injury is *certainly* impending." *Lujan*, 504 U.S. at 564 n.2 (quotation omitted).

The district court's ruling requires only that the federal defendants *consider* use of intervenor's water when they consult about protecting the silvery minnow. Intervenors note that reinitiation of consultation is imminent, if not already begun (and, in any event, will certainly occur by December 2003). But consultation *per se* causes them no concrete injury; unless and until consultation actually results in a decision to use their water–which may never happen–any "injury in fact" to their interests attributable to the district court's order involves just the kind of conjecture *Lujan* dismisses as inadequate to confer standing. Indeed, *Lujan* explains that the reason a "high degree of immediacy" is required in cases involving unrealized harm is "to reduce the possibility of deciding a case in which no injury would have occurred at all," *id.* (quotation omitted), which remains a possibility here.

The federal defendants have not taken or threatened to take intervenors' water pursuant to their discretionary authority, and attendant duty, to consider such action recognized by the district court. Thus, intervenors cannot carry their burden of demonstrating standing to challenge the district court's order.

*Cf., e.g., Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1282 (10 th Cir.) (licensee lacked standing to challenge statute granting city discretion to suspend/revoke licenses when city had not sought or threatened such action), *petition for cert. filed*, 71 U.S.L.W. 3094 (U.S. July 5, 2002) (No. 02-66); *Keyes*, 119 F.3d at 1445-46 (parties lacked standing to challenge district court's approval of state "Busing Clause" because they "failed to demonstrate that the[ir] School District or any school has withdrawn policies, instituted policies, or refrained from withdrawing or instituting policies as a result of the Busing Clause"); *Sierra Club v. Babbitt*, 995 F.2d 571, 575 (5th Cir. 1993) (appellants lacked standing to challenge court order requiring FWS to develop and disseminate water-flow information which related to their water interests but which, in itself, "ha[d] no legal consequence" for those interests). Intervenors' appeals must therefore be dismissed.

**Federal Defendants' Appeal**

The federal defendants do not similarly lack standing, as the district court's order includes a binding specification of at least one aspect of their consultative duties under the ESA. We therefore proceed directly to the question of appellate jurisdiction raised by plaintiffs-appellees' motion to dismiss.

As noted above, the district court's ruling regarding the scope of agency consultation did not conclude the proceedings below, as several other claims

remain unresolved. Thus, the federal defendants must establish a proper basis for interlocutory appeal. For this they rely solely on the argument that the challenged ruling was an express injunction appealable under 28 U.S.C. § 1292(a)(1). Their position is precluded by the plain terms of the statute, which, in light of federal policy against piecemeal review, should be strictly construed. *See Ingram Towing Co. v. ADNAC Inc.*, 59 F.3d 513, 515 (5th Cir. 1995); *Sierra Club v. Marsh*, 907 F.2d 210, 214 (1 st Cir. 1990). In the course of reviewing the BO, the district court simply declared what BOR's authority, and hence consultative duty, was with respect to use of intervenors' water to protect the minnow; the court did not issue an "order[] . . . granting [an] . . . injunction[]." Section 1292(a)(1). We have not been presented with, nor have we found, any authority equating such a declaration with the express grant of an injunction.

The federal defendants' argument for § 1292(a)(1) jurisdiction relies almost exclusively on *Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999), which permitted an interlocutory appeal from another proceeding involving the silvery minnow, brought shortly after it was listed as endangered. That listing required FWS to designate a critical habitat for the minnow. When FWS missed the deadline for the designation, environmental organizations brought suit seeking a declaration that FWS was in violation of the ESA and an injunction compelling prompt FWS compliance with the habitat designation requirement. *See id.*

at 1182. The plaintiffs subsequently filed a motion which "expressly requested that the court declare the Secretary [of Interior] in violation of his non-discretionary ESA duties and order him to carry out his duties within 30 days." *Id.* In response, FWS moved for a two-year stay of the proceedings, citing fiscal impracticability. The district court granted the stay and denied the plaintiffs' motion. We held the order constituted the denial of an injunction and therefore was immediately appealable under § 1292(a)(1).

The crux of *Forest Guardians*, in the federal defendants' view, was this court's holding that "[e]ven though plaintiffs failed to label their motion as one for injunction, it is clear from the content of the motion that plaintiffs were seeking injunctive relief," and, consequently, "it fits squarely within the plain language of § 1292(a)(1)." *Id.* at 1185 (quotation omitted). This holding is not applicable here. The district court's order did not purport to dispose of any motion for injunctive relief; rather, it was clearly directed at plaintiffs' request for legal (APA) review of the extant BO. The federal defendants' attempt to fill this gap in their analogy to *Forest Guardians* by noting two equitable requests made in plaintiffs' pleadings is meritless. The district court's order did not address these requests, neither of which had to do with the scope-of-consultation issue the federal defendants wish to appeal. One sought expedited completion of the first BO (now moot), and the other was simply a catch-all request for an order

that the federal defendants take all necessary steps per the ESA to conserve the silvery minnow.

We certainly do not deny that the district court's analysis has significant consequences for how the federal defendants are to conduct their consultations. And, while the fact that an order has constraining implications does not make it an express injunction, it may support immediate appeal through the doctrine of *Carson v. American Brands, Inc.*, 450 U.S. 79, 83-84 (1981), which permits appeal from orders that (1) have the "practical effect" of granting or denying an injunction; (2) threaten "serious, perhaps irreparable" consequences; and (3) can be "effectually challenged" only through immediate appeal. *Forest Guardians*, 174 F.3d at 1185 (quotations omitted); *Hutchinson v. Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997) (same). However, the federal defendants do not asset a right to appeal under *Carson*, and the reason is fairly clear. Nothing prevents them from challenging the district court's adverse ruling regarding consultation once a final judgment, or a truly appealable interlocutory order effectuating that ruling, is entered in the case. Thus, the third and perhaps also the second element of the *Carson* test is not satisfied at this time.

## Conclusion

For the reasons stated above, intervenors' appeals (Nos. 02-2130, 02-2135, 02-2151, 02-2152, and 02-2186) must be dismissed for lack of standing; federal defendants' appeal (No. 02-2160) must be dismissed for lack of interlocutory appellate jurisdiction; and the motion for stay pending appeal must, accordingly, be denied as moot. We are aware that further proceedings regarding the possible release of intervenors' water are currently underway in the district court. Nothing we have said here is intended to affect or prejudge any party's right to seek immediate review of subsequent orders entered by the district court. We hold only that the appeals now pending before us must be dismissed.

These appeals are DISMISSED and the associated motion for stay is DENIED. All pending procedural motions are denied as moot.

ENTERED FOR THE COURT
PER CURIAM

-14-