**UNITED STATES COURT OF APPEALS**

**July 22, 2010**

**TENTH CIRCUIT**

WILLARD DEAN JACKSON,

    Petitioner–Appellant,

v.

JOHN WHETSEL, Sheriff,

    Respondent–Appellee.

No. 08-6252
(D.C. No. 5:08-CV-00486-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Willard Dean Jackson appeals from an order dismissing his 28 U.S.C. § 2254

habeas petition under Younger v. Harris, 401 U.S. 37 (1971). Exercising jurisdiction

pursuant to 28 U.S.C. § 2253, we reverse and remand to the district court with

instructions to grant the writ.

**I**

Jackson was charged in Oklahoma state court of making a lewd or indecent

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

proposal to a child under sixteen in violation of Okla. Stat. tit. 21, § 1123.[1] The

information alleged that Jackson:

> knowingly and intentionally made a lewd and indecent proposal to [the victim], who was at the time 15 years of age, that such child have unlawful sexual relations with another person, to wit: Willard Jackson asked [the victim] to take nude photographs of herself and give them to him and Willard Jackson asked [the victim] to touch herself and mast[u]rbate while he listened, contrary to the provisions of section 1123 of title 21 of the Oklahoma Statutes, and against the peace and dignity of the State of Oklahoma.

(capitalizations altered). At trial, the jury was instructed that it could convict only if the

state proved beyond a reasonable doubt that (1) the defendant, who was at least three

years older than the victim, (2) knowingly and intentionally, (3) made an oral lewd or

indecent proposal, (4) to a child under sixteen years of age, (5) for the child to have

unlawful sexual relations or intercourse with any person. The jury returned a guilty

verdict on the sole charge.

On direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA")

---

[1] Section 1123 states:

A. Any person who shall knowingly and intentionally:

1. Make any oral, written or electronically or computer-generated lewd or indecent proposal to any child under sixteen (16) years of age for the child to have unlawful sexual relations or sexual intercourse with any person . . .
. . . .
upon conviction, shall be deemed guilty of a felony . . . . The provisions of this section shall not apply unless the accused is at least three (3) years older than the victim.

unanimously reversed Jackson's conviction because the state did not introduce evidence to prove the fifth element of the crime; there was no evidence to suggest that Jackson proposed that the victim have unlawful sexual relations or intercourse <u>with any person</u>. By a three-to-two margin, however, a majority of the court ruled that the evidence adduced at trial proved that Jackson was guilty of a different crime, solicitation of a minor to perform or prepare obscene material or child pornography in violation of Okla. Stat. tit 21, § 1021(B).[2] Treating § 1021(B) as a lesser-included offense of § 1123, the OCCA remanded to the district court to enter a new judgment of conviction under § 1021(B) and to resentence Jackson accordingly. Jackson filed a petition for rehearing arguing that the imposition of a conviction of a crime for which he was not charged or tried by jury violated his rights under the Sixth Amendment. The OCCA denied the petition.

Before resentencing could take place, Jackson filed a 28 U.S.C. § 2254 habeas

---

[2] Section 1021(B) reads:

B. Every person who:

1. Willfully solicits or aids a minor child to perform; or

2. Shows, exhibits, loans, or distributes to a minor child any obscene material or child pornography for the purpose of inducing said minor to participate in,

any act specified in paragraphs 1, 2, 3 or 4 of subsection A of this section shall be guilty of a felony, upon conviction . . . .

The referenced subsection A describes indecent exposure, indecent exhibitions, obscene material, and child pornography. <u>See</u> Okla. Stat. tit. 21, § 1021(A).

petition in the United States District Court for the Western District of Oklahoma seeking the dismissal of the charges, release from state custody, and an injunction against future state prosecutions in the case. The district court dismissed the habeas petition, concluding that it was barred under the Younger abstention doctrine. After Jackson filed a notice of appeal, we granted a certificate of appealability.

**II**

We review de novo a district court's decision to abstain under Younger. See Walck v. Edmondson, 472 F.3d 1227, 1232 (10th Cir. 2007). Younger requires federal courts to abstain from intervention into state criminal proceedings if: "(1) state judicial proceedings are ongoing; (2) state proceedings implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." Winnebago Tribe v. Stovall, 341 F.3d 1202, 1204 (10th Cir. 2003) (citation omitted). If these three conditions are satisfied, "Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1215 (10th Cir. 2003) (citation omitted).

We conclude that Younger abstention is inappropriate because state proceedings do not provide Jackson an adequate opportunity to present his claim. "Typically, a plaintiff has an adequate opportunity to raise federal claims in state court unless state law clearly bars the interposition of the federal statutory and constitutional claims." Id. (quotation and alteration omitted); see also Younger, 401 U.S. at 45 ("The accused

- 4 -

should first set up and rely upon his defense in the state courts . . . unless it plainly appears that this course would not afford adequate protection." (quotation omitted)).

The district court held that Jackson could raise his federal claims in a state petition for post-conviction relief. In so holding, however, it ignored the fact that the state's highest court has already rejected the claims Jackson seeks to present. The OCCA has been abundantly clear that post-conviction petitions will not provide a second bite at the apple:

> On numerous occasions this Court has set forth the narrow scope of review available under the amended Post-Conviction Procedure Act. The Post-Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal. The Act has always provided petitioners with very limited grounds upon which to base a collateral attack on their judgments. Accordingly, claims that could have been raised in previous appeals but were not are generally waived; claims raised on direct appeal are res judicata.

Murphy v. State, 124 P.3d 1198, 1199-1200 (Okla. Crim. App. 2005) (citations omitted, emphases added); see also Okla. Stat. tit. 22, § 1086 ("Any ground finally adjudicated . . . in the proceeding that resulted in the conviction . . . may not be the basis for a subsequent application [for post-conviction relief]."); Woodruff v. State, 910 P.2d 348, 350 (Okla. Crim. App. 1996) ("The application of the [post-conviction procedure] act is limited to only those claims which, for whatever reason, could not have been raised on direct appeal. Issues which were raised and decided on direct appeal are barred from further consideration by res judicata." (citations and italics omitted)); Hale v. State, 807 P.2d 264, 267 (Okla. Crim. App. 1991) ("Petitioner is . . . barred from asserting any claims

- 5 -

which have been, or which could have been, raised previously in his direct appeal. It is not the purpose of the Post-Conviction Procedure Act, to provide a second appeal under the mask of post-conviction application." (citation and quotation omitted)); cf. Crown Point I, LLC, 319 F.3d at 1215-16 (holding no adequate opportunity to raise federal claims based on operation of state preclusion rules).

Unlike the parties in Huffman v. Pursue, Ltd., 420 U.S. 592, 610 (1975), and Middlesex County Ethics Commission v. Garden State Bar Ass'n, 457 U.S. 423, 435-36 (1982), Jackson does not seek to excuse a failure to present claims to the relevant state tribunal. Nor does Jackson argue his claim is doomed based on the rejection of similar claims in other cases. See Hicks v. Miranda, 422 U.S. 332, 350 & n.18 (1975) (rejecting contention that a court need not apply Younger because an intermediate appellate court had denied similar claims in another case). Rather, Jackson correctly points out that his constitutional claims have already been presented to, and rejected by, the highest court in the state. It beggars belief to suppose that Jackson has an adequate opportunity to litigate his federal claims before the OCCA when that court committed the constitutional violation at issue, see Part III, infra, has already rejected the very claims Jackson asks the federal courts to consider, and has repeatedly stressed that it will not reconsider in post-conviction proceedings arguments rejected on direct appeal. We do not require a federal claimant to file seriatim petitions for rehearing ad infinitum.

Moreover, the state does not contend that its post-conviction procedures permit Jackson to re-assert his claims. Rather, it acknowledges that placing "this matter back in

front of the OCCA" presents "a difficult issue."  It argues that Jackson has an adequate opportunity to present his claims because the parties can jointly request that the OCCA amend its order to allow Jackson to be retried or, if that fails, the state can independently request a new trial at the district court level.  Yet Jackson does not seek retrial, he requests release from custody and an injunction <u>against</u> retrial.  The state's first proposal is simply an offer of settlement:  If Jackson agrees to waive his double jeopardy claim, the state will support his Sixth Amendment claim (albeit with no guarantee the OCCA will grant relief).  Such an offer does not provide Jackson an adequate opportunity to litigate his claims in state court.  The second proposal suggests that the trial court may disregard the OCCA's mandate by ordering retrial rather than entering a conviction.  However, under Oklahoma law, "the trial tribunal has no power to reopen issues precluded by the terms of an appellate opinion but must obey the mandate's direction." <u>Chamberlin v. Chamberlin</u>, 720 P.2d 721, 728 n.35 (Okla. 1986).

More fundamentally, both proposals misconstrue the third prong of the <u>Younger</u> test.  The state's argument presumes there is an adequate state forum whenever there is a theoretical possibility—no matter how minute—that Jackson's conviction will not stand.  But in determining whether a litigant has an adequate opportunity to present his claims, we do not search for potential outcomes that might benefit the petitioner; the possibility of a pardon, for example, does not force us to abstain under <u>Younger</u>.  Rather, we ask if the federal plaintiff has the opportunity to present his particular federal constitutional claims in state court proceedings.  <u>See</u> <u>Moore v. Sims</u>, 442 U.S. 415, 430 (1979) ("[T]he

- 7 -

only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims . . . ."); Juidice v. Vail, 430 U.S. 327, 337 (1977).

Due to the highly unusual procedural history of this case, Jackson is unable to present his federal claims in state court. Accordingly, the district court erred by dismissing these claims under Younger.

## III

Having concluded that the district court erred in dismissing Jackson's petition on abstention grounds, we exercise our discretion to proceed to the merits of Jackson's Sixth Amendment claim.[3] "Although we will generally decline to consider in the first instance issues not considered by the district court, we will make an exception where injustice might otherwise result, or where the issue presents only a question of law." Sac & Fox Nation v. Norton, 240 F.3d 1250, 1264 (10th Cir. 2001) (quoting United Food & Commercial Workers Union v. Sw. Ohio Reg'l Transit Auth., 163 F.3d 341, 360 n.9 (6th Cir. 1998)); see also Ohlander v. Larson, 114 F.3d 1531, 1538 (10th Cir. 1997) ("Although the district court's failure to apply the correct legal standard could serve as a basis for remand, in the interest of efficiency and judicial economy, and in the interest of

---

[3] Because Jackson's claims are against a state rather than the federal government, the Fourteenth Amendment is technically at issue. However, the relevant Sixth Amendment rights have been incorporated so as to apply against the states. See Duncan v. Louisiana, 391 U.S. 145 (1968); In re Oliver, 333 U.S. 257 (1948). We accordingly refer to Jackson's Sixth Amendment claim to distinguish it from his Fifth Amendment double jeopardy claim, which also applies against the states by way of the Fourteenth Amendment, see Benton v. Maryland, 395 U.S. 784 (1969).

providing immediate guidance as to the most appropriate direction of this case . . ., we turn to the merits . . . ."). Several factors inform our choice: The facts relevant to Jackson's Sixth Amendment claim are not in dispute, the issue is purely legal (and also not in dispute), and judicial economy concerns favor consideration by this court given the patent unconstitutionality of the OCCA's order. Moreover, we cannot ignore the fact that Jackson has been imprisoned under an infirm order for more than two and a half years.

We hold that Jackson is entitled to habeas relief because the OCCA order was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The state wisely concedes that solicitation of a minor to perform or prepare any obscene material or child pornography in violation of Okla. Stat. tit 21, § 1021(B) is not a lesser included offense of making a lewd or indecent proposal to a child under sixteen in violation of Okla. Stat. tit. 21, § 1123. The state further admits that the jury was never instructed on the elements of § 1021(B). In so doing, it has conceded that the OCCA's order violated Jackson's clearly established Sixth Amendment rights.

In Cole v. Arkansas, 333 U.S. 196 (1948), the Supreme Court addressed a state appellate court order essentially identical in all relevant ways to the one under consideration. In that case, the petitioners were charged in state court with a violation of § 2 of Act 193, which made it illegal "to assemble at or near any place where a 'labor dispute' exists and by force or violence prevent . . . any person from engaging in any lawful vocation, or . . . to promote, encourage or aid any such unlawful assemblage."

Cole, 333 U.S. at 198.  Section one of the same act made it "unlawful for any person by the use of force or violence, or threat of the use of force or violence, to prevent or attempt to prevent any person from engaging in any lawful vocation."  Id. at 199.  The jury was instructed on the elements of § 2, and convicted on that charge.  Id.  On appeal, the Arkansas Supreme Court held that the facts alleged in the information—which accused the petitioners of "using force and violence to prevent [a certain individual] from working"—related to § 1, and affirmed a conviction under § 1 in lieu of addressing petitioners' constitutional challenges to § 2.  Cole, 333 U.S. at 200.  The state court denied a petition for rehearing advancing due process claims.  Id.

> The Supreme Court roundly rejected the state court's order:
>
> [The state court] affirmed [petitioners'] convictions as though they had been tried and convicted of a violation of § 1 when in truth they had been tried and convicted only of a violation of a single offense charged in § 2, an offense which is distinctly and substantially different from the offense charged in § 1.  To conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court.
>
>    We are constrained to hold that the petitioners have been denied safeguards guaranteed by due process of law—safeguards essential to liberty in a government dedicated to justice under law.

Id. at 202.  The Court explained that "[i]t is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."  Id. at 201; see also Jackson v. Virginia, 443 U.S. 307, 314 (1979) ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process.");

- 10 -

Sallahdin v. Gibson, 275 F.3d 1211, 1227 (10th Cir. 2002).

The OCCA ordered Jackson convicted of a crime for which he was neither charged nor tried, by a three-to-two vote no less. A jury has never been asked to consider the elements of § 1021(B), nor has any jury found those elements beyond a reasonable doubt.[4] The OCCA's order falls far outside the bounds of permissible judicial action under basic due process principals, and is contrary to clearly established federal law. Indeed, more than sixty years ago, the Cole court held that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge." 333 U.S. at 201.

Jackson was denied these core due process protections.[5] Accordingly, he is

---

[4] We are not faced with a situation in which the elements of another crime are completely subsumed by the elements of the charged crime. For example, an appellate court could be faced with a defendant who was charged with drug possession with intent to distribute. If that court concludes that insufficient evidence supported the intent to distribute element, it may nevertheless be the case that evidence was sufficient—and the jury conclusively found—all the elements of simple possession. We have no occasion to decide today whether an appellate court could order such a defendant convicted of simple possession under those circumstances.

[5] The OCCA dismissed these Sixth Amendment concerns on the ground that the factual allegations of the information put Jackson on notice that he was required to defend against a § 1021(B) charge. The Supreme Court rejected this contention in Cole; despite factual allegations contained in the information that appeared to relate to a § 1 charge, the Court explained:

> The petitioners read the information as charging them with an offense
> under § 2 of the Act, the language of which the information had used. The
> trial judge construed the information as charging an offense under § 2. He
> instructed the jury to that effect. He charged the jury that petitioners were

Continued . . .

- 11 -

unambiguously entitled to habeas relief. A state appellate court has no authority to simply order a conviction under § 1021(B). Because Jackson is being held pursuant to a constitutionally infirm order, he must be released from custody.

**IV**

Jackson also argues that a subsequent charge under § 1021(B) would violate his rights under the Double Jeopardy Clause, and accordingly seeks an injunction against future prosecution. We cannot address Jackson's double jeopardy claim on the merits because it is not yet ripe.

The ripeness doctrine is intended to "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977). Ripeness is a "jurisdictional prerequisite" to our review, and thus "may be examined by this court sua sponte." Keyes v. School Dist. No. 1, 119 F.3d 1437, 1444 (10th Cir. 1997) (italics omitted). In determining whether an issue is ripe, we must "evaluate both the fitness of the issue[] for judicial decision and the hardship to the parties of withholding court consideration." Abbott

---

on trial for the offense of promoting an unlawful assemblage, not for the offense "of using force and violence." Without completely ignoring the judge's charge, the jury could not have convicted petitioners for having committed the separate, distinct, and substantially different offense defined in § 1.

Cole, 333 U.S. at 200. Identical circumstances are presented here, and the same result is required.

- 12 -

Labs., 387 U.S. at 149.

With respect to the first factor, we consider "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995) (quotation omitted). Although the state certainly appears intent on charging Jackson under § 1021(B), we have difficulty considering a double jeopardy claim in the absence of a second information. Without a specific charging document to review, our double jeopardy analysis would be necessarily hypothetical. See United States v. Brown, 155 F.3d 431, 435 (4th Cir. 1998) (declining to address unripe double jeopardy claim because second charge might fall into exception permitting successive prosecution "when the lesser charge is instituted because the additional facts needed to prosecute the more serious crime have not yet occurred or have not been discovered despite the exercise of due diligence"); United States v. Tovar-Rico, 61 F.3d 1529, 1532 (11th Cir. 1995) ("If the government decides to proceed with another trial of [defendant], she may raise the double jeopardy issue which would then be ripe for decision. We cannot speculate what further proceedings, if any, will take place.").

Even assuming that the state will seek to try Jackson for a violation of § 1021(B), we have no particular factual allegations to compare to the original charge and trial. "Even though a challenged [state action] is sure to work the injury alleged . . . adjudication might be postponed until a better factual record might be available." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 300 (1979) (quotation omitted).

- 13 -

Unless and until Jackson is actually charged, his double jeopardy challenge is unfit for proper judicial review.

As to the second ripeness factor, we must ask "whether the challenged action creates a direct and immediate dilemma for the parties." New Mexicans for Bill Richardson, 64 F.3d at 1499 (quotation omitted). Although our conclusion that Jackson's double jeopardy claim is unripe certainly places him in an uncomfortable position, it does not impose an immediate dilemma. If Jackson is charged with a violation of § 1021(B), he will have an opportunity to advance his double jeopardy argument before the trial court. We recognize "that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense." Abney v. United States, 431 U.S. 651, 660-61 (1977). But Jackson will be able to interpose his claim prior to trial. Moreover, we have held that a double jeopardy claim may be heard in federal court on a § 2241 habeas petition, and that such petitions are not subject to Younger abstention. See Walck, 472 F.3d at 1233, 1235.

In light of the hypothetical nature of Jackson's double jeopardy claim and the availability of multiple layers of review for that claim should he be charged under § 1021(B), we conclude that we lack jurisdiction to consider it.

**V**

For the foregoing reasons, we **REVERSE** the district court's dismissal of Jackson's habeas petition and **REMAND** with instructions to grant the writ.


ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge