**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLARD JACKSON,

      Plaintiff - Appellant,

v.

SHARON HOGAN; CITY OF
BETHANY,

      Defendants - Appellees.

No. 16-6042
(D.C. No. 5:14-CV-00277-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **PHILLIPS**, Circuit Judges.
_____

Mr. Jackson appeals the district court's grant of summary judgment for the

defendants on his complaint alleging malicious prosecution, which he brought under

42 U.S.C. § 1983.  In his complaint he asserted that defendant Sharon Hogan, a

police officer in the city of Bethany, Oklahoma, prepared and signed an arrest

warrant affidavit containing false statements and omissions.  The affidavit concluded

there was probable cause to believe that Mr. Jackson had violated title 21, § 1123 of

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Oklahoma Statutes, which criminalizes making a lewd or indecent proposal to a child under the age of sixteen. The district court dismissed the claims against the City and granted qualified immunity to Ms. Hogan. We affirm.

After Mr. Jackson was charged and arrested, and after a first trial ended in a hung jury, a second Oklahoma jury convicted him of making a lewd or indecent proposal. He was sentenced to life imprisonment without parole.

The Oklahoma Court of Criminal Appeals (OCCA) overturned his conviction, holding there was no evidence to show Mr. Jackson met the statutory element that he proposed "for the child to have unlawful sexual relations or sexual intercourse with any person." *Id.* § 1123(A)(1). But a majority of the OCCA ruled that the evidence was sufficient to find him guilty of a different crime: solicitation of a minor to perform or prepare obscene material or child pornography. *See* Okla. Stat. tit. 21, § 1021(B). It therefore remanded to the trial court to enter a new judgment of conviction and to resentence Mr. Jackson.

Before resentencing could take place, Mr. Jackson sought federal habeas relief. The Western District of Oklahoma denied his petition, concluding that *Younger* abstention applied. *See Younger v. Harris*, 401 U.S. 37 (1971). He appealed. In an unpublished decision, we determined that *Younger* abstention was inappropriate, and that the OCCA's actions in convicting Mr. Jackson of the uncharged solicitation offense violated his Sixth Amendment rights. Accordingly, we reversed and remanded with instructions to grant the writ. *Jackson v. Whetsel*, 388 F. App'x 795, 800, 803 (10th Cir. 2010). Mr. Jackson was released, and he was not retried.

2

He then brought this action under 42 U.S.C. § 1983 and Oklahoma state law against Sharon Hogan, the officer who investigated him, and her employer, the City of Bethany, Oklahoma. His complaint charged that they had unreasonably seized and prosecuted him in violation of the Fourth and Fourteenth Amendments and the Oklahoma Constitution.

The defendants moved for summary judgment. In response, Mr. Jackson conceded his claims against the City and his claim against Ms. Hogan under the Oklahoma Constitution.[1] This left only his § 1983 claim against Ms. Hogan.

In support of his malicious-prosecution claim against Ms. Hogan, Mr. Jackson argued that she had signed an affidavit of probable cause for his arrest with reckless disregard for its truthfulness. In her affidavit, Ms. Hogan stated:[2]

> I am a Police Sergeant employed by the Bethany Police Department, City of Bethany, County of Oklahoma County, assigned to the Investigations Division.
>
> That the DEFENDANT is living in Shawnee, OK and the victim is a 15 yr old female living in Bethany, OK. DEFENDANT called victim using her personal phone line and started a conversation. That over a three month time period, DEFENDANT called victim about 8 times. Victim told DEFENDANT how old she was during the first phone call. DEFENDANT told victim his screen name over the internet is "catman4545". DEFENDANT told victim he visits bars in OKC periodically and they all know him as "catman". DEFENDANT's conversation during the phone calls started becoming sexual in nature. The calls from DEFENDANT would come in from his cell phone, home phone or pay phones.

---

[1]  Mr. Jackson makes no argument in this appeal that the City should not have been granted summary judgment. Accordingly, we consider only whether summary judgment was properly granted in favor of Ms. Hogan.

[2]  At the time she prepared the affidavit, Ms. Hogan was known as Ms. Cadle.

DEFENDANT told victim she had a "sexy voice". DEFENDANT told victim he was a light skinned black guy and had a black wife. DEFENDANT offered victim $6000 for pictures of herself.

DEFENDANT, during one phone call, asked victim to "finger herself" while he listened and that he liked to hear girls over the phone touching themselves. She told him "No".

DEFENDANT asked victim to "hook up" with one of her friends who was a lesbian and get them on video cam "doing stuff". DEFENDANT also told her about another female (Amber) who she could "hook up" with who has a video cam and lives in McAlester, OK. DEFENDANT wanted victim to drive to McAlester to meet with this female. She told him she was not interested.

DEFENDANT had been conversing over instant messenger with Amber (adult female) in McAlester. DEFENDANT told Amber, that the victim in OKC was older and wanted to "hook up" with her and that he wanted them to do "something" together using her web cam. That DEFENDANT gave Amber the victim's phone number. When Amber called the victim, she found out her real age and apologized for calling her. DEFENDANT had also asked Amber to play with herself on the web cam so he could watch. DEFENDANT had asked Amber that when she got together with the victim, if he could stand in the doorway and "jack off" while he watched them mess around. Amber said DEFENDANT also asked if he could join in.

Amber stated that DEFENDANT told her he was getting a divorce from his wife because she caught him looking at naked young girls on the computer and talking to them on the phone. DEFENDANT also told Amber that he goes by "catman".

On 10/02/02 at 5:23pm, the victim received another call from DEFENDANT. This call was traced through Southwestern Bell Call Trace. The call was made from a pay phone in the break room at Al-Ko Kober Corp in Shawnee, OK. Det Cadle contacted the company and found that only one black male was working during this time, DEFENDANT.

Det Cadle went to DEFENDANT's address to interview him and DEFENDANT came to the door. Det Cadle asked DEFENDANT if he ever uses the screen name of "catman" and DEFENDANT stated he uses it sometimes. DEFENDANT refused an interview.

That Det Cadle found out from various other police depts around the state that DEFENDANT's modus operandi is breaking into homes of young

4

> single females or female roommates and threatening them to sexually assault themselves or make them have sex with each other while he watched. That DEFENDANT is a Registered Sex Offender.
>
> Based on my investigation I believe the DEFENDANT to be guilty of LEWD, INDECENT PROPOSALS OR ACTS AGAINST CHILD UNDER 16 and in violation of Title 21 section 1123.

R., Vol. 1 at 111-12.

The district court determined that under the undisputed facts Ms. Hogan had probable cause to believe that it was Mr. Jackson who placed the phone calls to the victim. Accordingly, the affidavit did not violate his constitutional rights. Ms. Hogan was therefore entitled to qualified immunity, or alternatively, to summary judgment on the ground that Mr. Jackson failed to prove causation to support his § 1983 claim. The district court entered judgment in favor of the defendants, from which Mr. Jackson appeals.

### 1. Standard of Review

We review de novo the district court's grant of summary judgment on the basis of qualified immunity, viewing the evidence in the light most favorable to the nonmoving party. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). When a defendant asserts qualified immunity, the burden shifts to the plaintiff to show that (1) the defendant violated his constitutional rights; and (2) it was clearly established at the time of the violation that such actions violated that right. *Id.* Once "a plaintiff meets this heavy burden, the burden shifts back to the defendant to prove that there are no genuine disputes of material fact and that he is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(a) (stating summary-judgment standard).

5

Within these parameters, we may affirm summary judgment on any basis that is supported by the record. *Sanchez v. Vilsack*, 695 F.3d 1174, 1180 (10th Cir. 2012).

### 2. Malicious-Prosecution Standard

"[W]e have . . . recognized a cause of action under § 1983 for malicious prosecution under the Fourth Amendment." *Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir.), *petition for cert. filed* (U.S. Jan. 11, 2016) (No. 15-1281). The elements of such a claim include the following: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id.* at 754 n.1 (internal quotation marks omitted). The argument here centers primarily on the third element: the presence or absence of probable cause.

"Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause." *Puller*, 781 F.3d at 1197. "In such a situation, we measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Id.*

In addressing the second element of the qualified immunity inquiry, whether the officer violated clearly established law, we ask whether there was "arguable

probable cause" to support the challenged conduct. *Culver v. Armstrong*, 832 F.3d 1213, 1217-18 (10th Cir. 2016) (internal quotation marks omitted). "Arguable probable cause is another way of saying that the officers' conclusions rest on an *objectively reasonable*, even if mistaken, belief that probable cause exists." *Id.* at 1218 (internal quotation marks omitted).

### 3. Mr. Jackson's Argument

Mr. Jackson contends that Ms. Hogan's affidavit lacked probable cause for two reasons: (1) it identified him as the perpetrator, even though Ms. Hogan did not have probable cause to name him as the caller described by the victim; and (2) it falsely alleged that he proposed to the under-aged victim that she engage in sexual acts with another woman, a fact the victim later denied in her preliminary hearing testimony. In district court, Mr. Jackson developed only the first of these arguments in his response to summary judgment. His summary-judgment brief contained only passing reference to whether the "unlawful sexual relations or sexual intercourse with any person" element was satisfied. These came mostly in the context of discussing the OCCA's decision vacating his conviction and whether it was entitled to collateral-estoppel effect. In sum, he did not adequately present his second argument to the district court. *See* R., Vol. 1 at 83-104. Additionally, the district court only addressed his argument concerning whether the affidavit contained facts sufficient to show that he was the perpetrator. We therefore deem his second argument forfeited for purposes of appeal, and we decline to address it. *See BV Jordanelle, LLC v. Old*

7

*Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1206 (10th Cir. 2016) (declining to consider forfeited arguments where no plain-error argument has been made).

Turning to the issue of whether the affidavit's identification of Mr. Hogan as the perpetrator was supported by probable cause, we note that in his response to the defendants' motion for summary judgment, Mr. Jackson admitted the truth of nearly every fact contained in Ms. Hogan's affidavit, including several underlying facts that supported identifying him as the perpetrator. *See* R., Vol. 1 at 92-94, 111-12; Vol. 2 at 13-26. He nevertheless argues that her affidavit included false statements and omissions showing a reckless disregard for the truth concerning the true perpetrator's identity.

Mr. Jackson complains that the affidavit referred to him repeatedly as "DEFENDANT," when he had not yet been charged with a crime. Assuming the use of the term "DEFENDANT" constitutes "false information," removing it or substituting "Mr. Jackson" would not have affected the probable cause determination.

Mr. Jackson next complains that the affidavit contained false and immaterial information about his prior criminal conduct involving other women and the fact that he is a registered sex offender. But even if information about his past crimes were subtracted, the remaining allegations of the affidavit were sufficient to establish probable cause to believe that it was Mr. Jackson who made the incriminating phone calls.

Mr. Jackson next argues that "[t]here is no allegation found in [the] affidavit that the same caller placed all [eight] calls." Aplt. Opening Br. at 18. To the

8

contrary, the affidavit recited that Mr. Jackson "called [the] victim about 8 times." R., Vol. 1 at 111. Furthermore, in his response to the defendants' motion for summary judgment, Mr. Jackson admitted that a person identifying himself as "Michael" called the victim seven or eight times over a three-month period. He denies that he is "Michael," but he has cited no evidence creating a genuine factual issue concerning whether a different person was responsible for any of the calls.

In a related argument, Mr. Jackson contends that at most, he was linked to the last phone call, the one traced to his workplace, and there is no evidence that he made any illegal proposition to the victim during that phone call. Again, however, Ms. Hogan's affidavit recited, and Mr. Jackson admitted in district court, that the same caller made all of the calls, including the earlier calls involving sexual propositions. He cites no evidence to the contrary.

Mr. Jackson also complains that Ms. Hogan improperly centered her investigation on finding a black defendant—prematurely excluding suspects of any other race—because the victim said the caller told her he was black. He argues that there is no showing the fifteen-year-old victim possessed the expertise to identify an African-American voice (assuming that such a voice even exists). But the victim did not merely identify the caller as black by the sound of his voice; *he told her he was black*. Mr. Jackson's argument thus rests on the proposition that the caller deliberately misidentified himself as a black person. But he cites no evidence to support that speculative proposition.

9

Finally, Mr. Jackson argues that Ms. Hogan omitted from her affidavit (and failed to investigate) the possibility that other black people who worked for Al-Ko Kober Corp might have been in the break room before or after their shift, and therefore have had the opportunity to place the final, traced call to the victim. In his summary-judgment response, Mr. Jackson admitted that he was the only black male working on the shift at the time the call was made, and that the call occurred during one of his ten-minute breaks. Giving this timing and the other evidence of his involvement detailed in the affidavit, the omission of the speculative possibility that some other black male employee could have made the call did not rob the affidavit of probable cause.

In sum, even if we exclude all the allegedly false information Mr. Jackson has identified, the affidavit contained facts showing probable cause to believe that he was the perpetrator of the offense charged. He has therefore failed to demonstrate that Ms. Hogan or the City violated his constitutional rights, and the district court therefore properly granted summary judgment in favor of the defendants. We affirm the district court's judgment.

Entered for the Court

Gregory A. Phillips
Circuit Judge

10